777 So.2d 643 (2001)
STATE of Louisiana
v.
Irvin BROOKS.
Nos. 00-KA-953, 00-KA-954.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 2001.
Rehearing Denied February 22, 2001.
*644 Frederick Kroenke, Louisiana Appellate Project, Baton Rouge, LA, Counsel for Irvin Brooks, Defendant-Appellant.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry Boudreaux, Frank Brindisi, Assistant District Attorneys, Twenty-Fourth Judicial District Parish of Jefferson, State of Louisiana, Gretna, LA, Counsel for Allstate Insurance Company, Plaintiff-Appellee.
Panel composed of Judges DUFRESNE, CHEHARDY and ROTHSCHILD.
ROTHSCHILD, Judge.
The defendant, Irvin Brooks, was convicted of three counts of distribution of cocaine and now appeals. For the following reasons, we reverse and remand for a new trial.
The Jefferson Parish District Attorney charged Irvin Brooks with four counts of distribution of cocaine alleged to have occurred on April 9, 1996, August 22, 1996, August 23, 1996, and August 26, 1996. During the trial and in the presence of the jury, the state dismissed the April 9, 1996 charge because the defendant was incarcerated on that date. Following trial, the jury returned a verdict of guilty as charged on the remaining three counts.
The defendant was sentenced to twenty-five years imprisonment on each count to be served concurrently and with the first five years of each sentence to be served without benefit of parole, probation, or suspension of sentence. Subsequently, the state filed a habitual offender bill of information alleging the defendant to be a third felony offender. After a hearing, the trial judge found the defendant to be a third felony offender, vacated the sentence on one of the convictions and imposed a sentence of life imprisonment without the benefit of parole, probation or suspension of sentence to run concurrently with the other two sentences.

FACTS
In 1996, the Jefferson Parish Sheriff's Office conducted an undercover narcotics operation on the Eastbank of Jefferson Parish. On August 22, 1996, Deputy Derrick Casteen purchased crack cocaine from a man later identified as the defendant. On the day in question, Deputy Casteen was driving a car in the area of South Causeway Boulevard and Burns Street. The car was equipped with a hidden video recorder. Deputy Casteen saw the defendant standing at the corner, and asked for a "$20.00 rock." The defendant handed the officer a cocaine rock, and the officer paid the defendant with a pre-recorded twenty-dollar bill. A surveillance team headed by Detective Wilkie DeClouet monitored the transaction with an audio transmitting device. Later, Detective DeClouet viewed the videotape and recognized the defendant as the person who had sold the cocaine to Deputy Casteen. He showed a photographic lineup containing the defendant's photograph to Deputy Casteen, who positively identified the defendant from the lineup.
The next day, August 23, 1996, in the area of South Causeway and Burns Street, Detective Rene Selva participated in the undercover purchase of crack cocaine from a man who was also later identified as the defendant. When the officer stopped at the intersection, the defendant approached the car. Detective Selva asked for "two 20 crack rocks," but the defendant replied that he only had a "$40.00." Detective Selva gave the defendant forty dollars in exchange for the crack cocaine. This transaction was likewise captured on videotape *645 by the video recorder in Detective Selva's undercover vehicle. After the transaction was completed, the crack cocaine was given to Detective DeClouet, who recognized the defendant as the seller. As with the previous transaction, Detective DeClouet showed a photographic lineup containing the defendant's photograph to Detective Selva, who made a positive identification of the defendant.
The next transaction occurred on August 26, 1996, and Deputy Heather Gorman was the undercover officer who purchased crack cocaine from the defendant at an intersection in the South Causeway Boulevard area. When the defendant approached Deputy Gorman's vehicle, she asked for a "20." The defendant then handed the officer a rock of cocaine in exchange for twenty dollars. The transaction was also recorded by the camera in the undercover vehicle. Detective De-Clouet showed Deputy Gorman a photographic lineup, and Deputy Gorman made a positive identification of the defendant. The videotapes of these three incidents were admitted into evidence over the defendant's objection and were played for the jury at trial.
On appeal, defendant assigns four errors. We find merit in defendant's fourth assignment of error, necessitating reversal of the convictions and sentences. Therefore, with the exception of the defendant's assignment regarding the sufficiency of the evidence, we pretermit consideration of the other assignments of error as moot.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment, the defendant challenges the sufficiency of the evidence against him in all three convictions. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Alexis, 98-1145 (La.App.5 Cir.6/1/99), 738 So.2d 57, 64, writ denied, 99-1937 (La.10/13/00), 770 So.2d 339. If the reviewing court concludes that the evidence was insufficient under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), then the defendant is entitled to an acquittal, and no further inquiry as to the trial errors is necessary.[1]
On the other hand, if the totality of the evidence satisfied the Jackson standard, the reviewing court must determine whether the trial court erred and if so, whether the court's error requires reversal of the conviction or was harmless. State v. Hearold. Accordingly, we consider whether the entirety of the evidence was sufficient to support the defendant's convictions.
The distribution of cocaine is prohibited by LSA-R.S. 40:967, which provides in part:
A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally: (footnotes omitted).
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98 0341 (La.1/8/99), 725 So.2d 1291, 1293. The man handed Detective Selva a rock of cocaine in exchange for twenty dollars. Detective Selva testified that he later gave the crack cocaine and videotape of the transaction to Sergeant *646 Joe Williams, the supervisor of the surveillance team.
Sergeant Williams testified that in July of 1996, he gave a still photograph taken from the videotape to Deputy Herbert James, who showed it around the area where Detective Selva had purchased the cocaine. Deputy James testified that a citizen in the area identified the defendant as the man depicted in the photograph. Deputy James communicated this information to Sergeant Williams, who subsequently showed Detective Selva a photographic lineup, and he positively identified the defendant from the lineup. Detective Selva testified that he had also purchased cocaine from the defendant on August 23, 1996. Further, Detective Selva testified that the defendant was the same man who had sold cocaine in both the April 9, 1996 and the August 23, 1996 transactions.
After the state rested its case, and out of the presence of the jury, the defense and state stipulated to a sworn statement by the warden of South Louisiana Correctional Center verifying that the defendant was incarcerated from May of 1995 through June 17, 1996, and that the defendant was not allowed to leave the facility during this time. In the presence of the jury, the state moved to dismiss the April 9, 1996 count based on the fact that the defendant was incarcerated. The trial judge then instructed the jury not to consider the dismissed charge to establish the defendant's guilt on any of the other three charges.
According to the defendant, no rational trier of fact could have believed Detective Selva's testimony that he was the perpetrator of the August offenses, since the officer had mistakenly identified him as the perpetrator of the April 9, 1996 offense. We find no merit in the defendant's position. Even without Detective Selva's testimony regarding the August 23, 1996 offense, there was other evidence sufficient to support the defendant's convictions.
Of particular significance is the testimony of Detective DeClouet, who was the surveillance officer on August 22, 23, and 26. According to Detective DeClouet, he had recognized the defendant when he watched the August 22, 1996 videotape because he had seen the defendant in the area of the undercover purchases approximately one month before the August transactions. Further, Detective De-Clouet testified that the photographic lineups shown to the officers for the three August transactions were based on a still photograph obtained from the August 22, 1996 videotape. Finally, Detective De-Clouet said he had never viewed the April 9, 1996 tape.
In finding the defendant guilty as charged of the three August offenses, the jury obviously resolved any conflicting testimony in favor of the state. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness, and the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App.5 Cir.4/29/97), 694 So.2d 1052. Accordingly, we find the evidence presented in this case, considered in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant distributed cocaine on August 22, 23, and 26, 1996.

ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment, the defendant contends that the trial court erred in allowing the jury, while deliberating, to view the videotapes of the drug transactions because the tapes contained audible statements of the defendant and the undercover officers. According to the defendant, this was the same as having testimony repeated to the jury in violation of LSA-C.Cr.P. art. 793. We agree.
Article 793 of the Code of Procedure prohibits the repeating of testimony to the jury: *647 Art. 793 Use of evidence in jury room; reading of recorded testimony
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict. (Emphasis added).
After deliberations had commenced, the jury returned to the courtroom and asked to view the videotapes. The videotaped transactions for August 22, 23, and 26, 1996 were played for the jury in the courtroom. At various intervals during the playing of the tapes, the videotapes were paused at the foreperson's request.
First, we recognize that while the defendant objected to the videotapes' admissibility, the record does not indicate that the defendant objected to the jury's viewing these videotapes during deliberations. As a general rule, the lack of a contemporaneous objection precludes review of that issue on appeal. LSA-C.Cr.P. art. 841. In State v. Adams, 550 So.2d 595, 599 (La.1989), the Louisiana Supreme Court stated that the "trial judge has no discretion to make exceptions" to the statutory prohibitions of LSA-C.Cr.P. art. 793. The Adams court recognized that the state and defense may agree to waive the statutory provision of LSA-C.Cr.P. art. 793, but the agreement must be in clear express language and must be reflected in the record.
Here, there is no evidence of such an agreement. In fact, the record does not reflect that defense counsel was even present when the jury requested to view the videotapes, or at the time the videotapes were played for the jury. Under the circumstances herein, we find that the defendant did not agree to waive the statutory provisions of Article 793.
In State v. Broussard, 598 So.2d 1302 (La.App. 3 Cir.1992), which is analogous to the instant case, the defendant was convicted of distributing cocaine to a confidential informant who posed as a customer. The entire drug transaction was videotaped by a hidden camera and microphone. During trial, the videotape was admitted into evidence and viewed by the jury. The confidential informant testified at trial about his conversation with defendant, the defendant's actions, and the transaction itself. Defendant did not testify. Over the defense's objections, the trial judge allowed the jury to review the videotape in its entirety.
The Broussard court concluded the trial court erred in allowing the jury to review the videotape during deliberations for the following reasons:
Our Louisiana Supreme Court has made it abundantly clear that allowing a jury to review evidence or testimony such as audiotapes or transcripts during deliberations is reversible error because of the possibility that jurors might give undue weight to that limited portion of the oral testimony adduced at trial. (Citations omitted).
Id. at 1303.
We note that courts have also found reversible error in instances where the jury, during deliberations, listened to a taped conversation between an undercover officer and defendant, State v. Lewis, 590 So.2d 1266 (La.App. 1 Cir.1991), writ denied, 600 So.2d 634 (La.1992), or reviewed a defendant's taped and transcribed statement, State v. Hailes, 501 So.2d 788 (La. App. 4 Cir.1986).
The state contends that the jury's viewing of the videotapes did not violate Article 793. As support, the state cites State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (La.1994), which held that the trial court did not abuse its discretion *648 by allowing the jury to view a videotape of the charged offense, first degree murder, while deliberating during the penalty phase.
The videotape in Davis depicted the defendant as he shot the victim in the chest at point blank range during a robbery. The videotape was in black and white, did not contain any sound, and showed no close-up shots. The Louisiana Supreme Court concluded that Article 793 did not prohibit the jury's viewing of the videotape, since a videotape is neither testimony nor written evidence.
We find Davis to be distinguishable because the videotape in that case did not contain audio. There is likewise no indication in Davis that the jury viewed the videotape at their leisure in the courtroom in the presence of persons other than the jury. Rather, we find Broussard, which also contained audio, to be on point.
We have reviewed the videotapes played for the jury during its deliberations. The tapes contain both video and audio recordings of the defendant and the undercover officers involved in the transactions. Each tape contains audible conversations between the defendant and the undercover officer. After the transaction, the officer relates a physical description of the defendant, including his race, and the color of his clothing. The record reflects the jury was allowed to watch and hear all of this as many times as they pleased, and created the "possibility that jurors might give undue weight to that limited portion of the oral testimony adduced at trial." Broussard, infra, at 1303. Under these circumstances, allowing the jury to view and listen to the tapes during deliberations was the same as having testimony repeated to the jury, which is expressly prohibited by LSA-C.Cr.P. art. 793.
For the foregoing reasons, we reverse the defendant's convictions, vacate and set aside his sentences, and remand this case to the trial court for a new trial.
REVERSED and REMANDED.
NOTES
[1] Alternately, the defendant may be entitled to a judgment of guilty of a lesser and included offense. LSA-C.Cr.P. art. 821; State v. Hearold, at fn. 1.